* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Dollar and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as
 STIPULATIONS
1. On March 2, 2001 and February 14, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between the parties at the relevant times.
3. The parties settled these claims by a Compromise Settlement Agreement, dated April 22, 2004. The agreement provided in pertinent part that plaintiff was settling his claims in exchange for a lump sum payment of $127,500.00. The agreement further provided defendant would continue paying plaintiff compensation at the rate of $380.45 per week "up to" the date the agreement is approved by the Industrial Commission.
4. By Order filed on May 5, 2004, the Industrial Commission approved the Compromise Settlement Agreement. The Order was transmitted to the parties via facsimile on the same date. Both parties received the Order approving Compromise Settlement Agreement on May 5, 2004.
5. On May 6, 2004, plaintiff's counsel faxed a copy of the Order approving Compromise Settlement Agreement to defendant's counsel, as well as by US Mail. The letter accompanying the Order informed defendant that payment must be made within 24 days to avoid imposition of a late payment penalty pursuant to the Court of Appeals' decision inCarroll v. Living Centers Southeast, 157 N.C. App. 116, 577 S.E.2d 925
(2003).
6. On May 6, 2004, defense counsel prepared a fax to Sandy Douglas of Key Risk with a copy of the Order of Approval, with a courtesy copy to the three separate representatives of PSNC Energy. Neither Sandy Douglas Key Risk, nor the three representatives of PSNC Energy, received the fax. Defense counsel learned of this after receiving notification from plaintiff's counsel that he was contending payments were late.
7. The period of 24 days after May 5, 2004 expired on June 1, 2004.
8. On Friday, May 21, 2004, Scudder Hedrick received a check from Key Risk Management Services in the amount of $380.45, reflecting an attorney fee payment from the ongoing compensation payments. On the same date, plaintiff's counsel learned that plaintiff had continued to receive weekly indemnity payments after the Industrial Commission approved the Compromise Settlement Agreement. By the terms of the Compromise Settlement Agreement the ongoing benefits should have ceased as of May 5, 2004 when the Commission approved the Agreement.
9. On Monday, May 24, 2004, plaintiff's counsel contacted defendant's counsel via electronic mail to inform him that payment pursuant to the Order approving Compromise Settlement Agreement had not been received and that if payment was not received by June 1, 2004, a ten percent late payment penalty would attach. The message was received by defense counsel.
10. On May 24, 2004, defense counsel forwarded a copy of the e-mail message to Sandy Douglas at Key Risk.
11. On May 26, 2004, plaintiff's counsel received a telephone call from Ms. Douglas, requesting a copy of the May 5, 2004 Order approving Compromise Settlement Agreement. On the same day, plaintiff's counsel sent her a copy of the Order along with a copy of the May 6, 2004 letter to defense counsel, which stated in part that payment pursuant to the Order was due within 24 days. This facsimile transmission was received on May 26, 2004.
12. A check was issued on May 27, 2004 to Scudder Hedrick in the amount of $31,875.00, representing attorney fees on the settled lump sum. The check was mailed to Scudder Hedrick on June 1, 2004 and received by Scudder Hedrick on June 2, 2004.
13. A check in the amount of $95,625.00 made payable to Robert Morrison was issued on June 1, 2004. The check was mailed to Scudder Hedrick on June 1, 2004 and received by Scudder Hedrick on June 3, 2004.
14. On June 1, 2004, defendant again issued a check to plaintiff in the amount of $380.45. Following the Industrial Commission's approval of the Compromise Settlement Agreement on May 5, 2004, defendant made 5 payments to plaintiff which totaled $1,902.25. These payments constituted an overpayment.
15. Thereafter, plaintiff filed a Motion for 10% Late Payment Penalty which Executive Secretary Weaver denied by Order filed July 19, 2004.
16. After the Executive Secretary denied plaintiff's motion, plaintiff repaid defendant the total amount of the amount paid to him in error after May 5, 2004 by check dated July 23, 2004.
17. Plaintiff appealed Executive Secretary Weaver's Order by filing a request for hearing on July 23, 2004.
18. The following documentary exhibits, attached hereto, are stipulated into evidence by the parties:
 (a) Compromise Settlement Agreement, (b) Order Approving Compromise Settlement, (c) Letter from plaintiff's counsel to defense counsel dated May 6, 2004, (d) Electronic correspondence dated May 24, 2004. (e) Facsimile transmission dated May 26, 2004. (f) Check dated May 27, 2004 to Scudder Hedrick. (g) Envelope post-marked June 1, 2004 addressed to Scudder Hedrick from Key Risk Management Services. (h) Check dated June 1, 2004 to Robert Morrison. (i) Envelope addressed to Robert Morrison post-marked June 1, 2004 from Key Risk Management Services. (j) Check from Robert Morrison to Key Risk Management Services dated July 23, 2004.
19. The issue for determination is whether plaintiff is entitled to payment of a late payment penalty pursuant to N.C. Gen. Stat. § 97-18(g) in the amount of $12,750.00?
 * * * * * * * * * * *
Based upon all of the competent evidence the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Key Risk administers the self-funded workers' compensation account for employer PSNC Energy. In this capacity, Key Risk issues the checks for compensation payments. Sandy Douglas was the person responsible for handling these claims for Key Risk.
2. Ms. Douglas was unaware that the Compromised Settlement Agreement had been approved by the Industrial Commission until May 24, 2004 because she had not received the fax prepared by counsel for defendant on May 6, 2004 attaching a copy of the Order of approval.
3. Being unaware that the Compromised Settlement Agreement had been approved, Ms. Douglas mistakenly continued to issue to plaintiff weekly temporary total disability payments, and on May 21, 2004 issued an attorney's fee payment to plaintiff's attorney who was receiving every fourth check. Plaintiff mistakenly continued to receive and accept the temporary total disability payments.
4. Neither plaintiff nor defendant intended for temporary total disability benefits to continue after the date that the Compromised Settlement Agreement was approved by the Industrial Commission, that being May 5, 2004.
5. Plaintiff has acknowledged the mistake made by the parties and repaid the amount received after Executive Secretary Weaver denied the Motion for a Penalty.
6. Under the 24-day period in which to make payment under the Compromise Settlement Agreement, defendant had through June 1, 2004. Defendant placed both checks to plaintiff and plaintiff's attorney in the mail on June 1, 2004, thereby relinquishing control over the funds. By placing the funds in the mail on June 1, 2004, defendant made payment within the 24-day period to make payment pursuant to the Order Approving Compromised Settlement Agreement.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Payment of a compromise settlement award must be tendered within twenty-four (24) days of receiving notice of a compromise settlement agreement to avoid imposition of a late payment penalty. Carroll v.Living Centers Southeast, Inc., 157 N.C. App. 116, 120-121,577 S.E.2d 925, 929, cert. Denied, 357 N.C. 249, 582 S.E. 2d 29 (2003).
2. The issue before the Commission is at what point is payment made by defendant under N.C. Gen. Stat. § 97-17. Since case law does not clearly answer this question, for the sake of clarity and efficiency, we must determine the most reasonable point in time that is discernable and verifiable. Certainty is crucial to all parties. Defendants need to know they have complied with statutory law, and plaintiffs need to know for certain if they are entitled to the statutory ten percent (10%) penalty, they can directly seek payment from defendant without using the Industrial Commission's resources required when such motions are filed seeking penalties. Time and cost efficiencies are gained by all parties, including the Industrial Commission, and ultimately the taxpayers.
3. The time period must be definite in order for defendant to fulfill other statutory obligations. Under N.C. Gen. Stat. § 97-18(h), defendants are required in cases resolved by Compromise Settlement Agreements to submit a Form 28C to the Commission within sixteen (16) days after final payment is made indicating, among other things, the date on which final compensation has been paid. If defendant fails to file this form within the statutory time period, defendant is assessed a $25.00 penalty by the Commission. In order for defendant to fulfill this statutory obligation, defendant must know the exact date payment is made to both complete the form and determine when the statutory time period to file the form begins.
4. The most clear and determinable time to consider payment made is the time at which defendant mails the check by depositing it with the United State Postal Service or other recognized parcel service. Defendants have control over the point in time in which the check is mailed. The defendants know this date and will have certainty that their obligation has been met. When the check is handed over to the parcel service, the check is no longer in defendant's control. This is a clearly and easily identifiable date the parties can reference to analyze their responsibilities and determine if statutory requirements have been met. Once defendant mails the check, defendant has fulfilled its payment obligation and no longer has control over the funds. Making payment by mail is an accepted and customary practice for insurance carriers. Defendants should not be penalized for a delay in delivery since the actual delivery of the check is not in defendants' control, but that of the postal or other parcel service.
To use the date plaintiff actually receives the check is fraught with problems, Primarily it will require defendant to estimate the number of days it will take for the check to reach the plaintiff after mailing it to assure plaintiff receives the check within the twenty-four (24) day time period. By taking this estimation into consideration, defendant's period of time to make payment is shortened. Not only is this not an easily discernable period of time with any exactitude, but it also runs contrary to an otherwise simple process contemplated under N.C. Gen. Stat. § 97-18(g). Further, using the date plaintiff receives the check to determine when payment is made may cause confusion and create an opportunity for self-interest especially since defendant does not have control over when plaintiff receives the check. Defendant only has control over the point in time when the check is placed in the mail tomake payment to plaintiff.
5. Morris v. L.G. DeWitt Trucking, 143 N.C. App 339, 545 S.E.2d 474
(2001) and Felmet v. Duke Power Co., 131 N.C. App 87, 504 S.E.2d 815
(1997) are not dispositive to the issue in the case sub judice and have been misrepresented to say payment is made the date it is received. Nevertheless, they are distinguishable. Both cases held that defendant had thirty-nine (39) days to make payment. The time period to make payment was reduced from thirty-nine (39) to twenty-four (24) days inCarroll v. Living Centers Southeast, Inc. 157N.C. App. 116, 120-121, 577S.E.2d 925, 929, cert. denied, 357 N.C. 249, 582 S.E.2d 29 (2003) which held that because of 2001 amendments to N.C. Gen. Stat. § 97-17, the parties no longer have an automatic right to appeal to the Court of Appeals, and the defendant must make payment within twenty-four (24) days of receipt of the order to avoid a penalty. Neither Morris norFelmet discuss whether payment is made the date it is mailed or the date it is received.
6. Plaintiff in Morris received payment on the fortieth [now twenty-fifth] day after defendant received the order; however, the thirty-ninth [now twenty-fourth] day fell on a Sunday. The sold issue was the calculation of days within which a defendant must pay a compromise settlement pursuant to N.C. Gen. Stat. § 97-17 before defendant is assessed a penalty under N.C. Gen. Stat. § 97-18(g).Morris at 341, 475. The court references the fact plaintiff received the check within the statutory time period to avoid penalty, but only for the purpose of reciting specific facts and to address the issue of when a statutory deadline falls on a Sunday, defendant has until the following business day to make payment. Morris at 342, 476. Since the check in Morris was not only mailed within the statutory time period, but was also received within the statutory time period, when payment was made was not an issue. If payment was received within the statutory time period, payment was obviously mailed and payment made timely. In the case at bar, payment was made within the statutory time period, though not received by the plaintiff's attorney until one day after and by plaintiff two days after the end of the statutory time period.
7. Plaintiff in Felmet received payment from defendant twenty-seven days after receipt of Order for payment under a compromise settlement agreement. The court concluded "a paying party liable under a compromise settlement has thirty-nine [now twenty-four] days from the date the compromise settlement is approved to tender payment, with liability for non-payment attaching on the fortieth [now twenty-fifth] day."Supra at 91. Since defendant had twelve days remaining to makepayment without penalty, the date when defendant made payment by placing the check in the mail was irrelevant to the outcome of the case. There was no issue or holding regarding when payment was made, as there is in this case, because payment was both made and received timely.
8. The date of issuance of the check by defendant is another identifiable point in time on which to determine when payment is made, in which case, the date of issuance could be the same as or earlier than the mailing date. There is Court of Appeals case law that holds byissuing a check within twenty-four (24) days of defendant's receipt of an Order Approving Compromise Settlement Agreement, defendant made payment timely. Sanders v. Brad Farrah Pontiac, No. COA05-77,2005 WL 3046451 (N.C.App. Nov. 15, 2005)(unpublished). However,Sanders is an unpublished opinion; therefore, it is only persuasive, not controlling authority.
9. Since defendant timely made payment by placing the check in the email on June 1, 2004, in compliance with the Compromised Settlement Award, which was within twenty-four (24) days of the Order Approving Compromised Settlement Agreement, plaintiff is not entitled to a ten percent (10%) penalty under N.C. Gen. Stat. § 97-18(g). Carroll v.Living Centers Southeast, Inc., 157 N.C. App. 116, 120-121,577 S.E.2d 925, 929, cert. denied, 357 N.C. 249, 582 S.E. 2d (2003).Morris v. L.G. Dewitt Trucking, 143 N.C. App. 339, 545 S.E.2d 474
(2001).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for a 10% penalty under N.C. Gen. Stat. §97-18(g) is DENIED.
2. Each party shall bear their on costs.
This the 26th day of October 2005.
 S/
 DIANNE C. SELLERS
COMMISSIONER
CONCURRING:
S/
LAURA KRANIFELD MAVRETIC
COMMISSIONER
DISSENTING:
S/
THOMAS J. BOLCH
COMMISSIONER